**Sean Martin SPURLOCK, Plaintiff,**

v.

**NYNEX, Defendant.**

No. 96–CV–0098C(F).

United States District Court, W.D. New York.

Dec. 6, 1996.

Boniello, Anton, Conti & Boniello (Michael J. Curtis, of Counsel), Buffalo, NY, for Plaintiff.

Enid Rasenick, White Plains, NY, Edward C. Cosgrove, Buffalo, NY, for Defendant.

## DECISION AND ORDER

CURTIN, District Judge.

### BACKGROUND

Plaintiff Sean Martin Spurlock brings this employment discrimination action alleging (1) disparate treatment, disparate impact and retaliation based on his race under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (2) disparate treatment and failure to accommodate under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12111 *et seq.* (the "ADA"); (3) violations of the Family Medical Leave Act, 29 U.S.C. § 2611 *et seq.* (the "FMLA"); and (4) disparate treatment, disparate impact and retaliation based on both his race and his disability under the

New York Human Rights Law N.Y.Exec.L. § 290 *et seq.* Plaintiff has been employed by defendant NYNEX as a cable splicing technician and field technician since January, 21, 1991, and was still working for defendant at the time he filed this action.

On August 14, 1995, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that defendant had subjected him to daily harassment because of his race and in retaliation for a previous charge of race discrimination since September 1994 in violation of Title VII. *See* Item 6, exhibit A. He crossed filed his complaint with the New York Division of Human Rights. On November 14, 1995, the EEOC issued plaintiff a right to sue letter authorizing him to proceed with this charge. *See* Item 6, exhibit B.

On February 26, 1996, this court referred all pretrial matters in this file to United States Magistrate Leslie G. Foschio (Item 2). It is hereby ordered that the referral to Magistrate Judge Foschio is vacated, and this court shall resume jurisdiction of all pending motions.

Plaintiff's complaint raises many grounds for relief. In count one, plaintiff alleges that defendant intentionally treated him differently than similarly situated white employees because of his race in violation of Title VII. Item 1, ¶¶ 9–17. First, plaintiff contends that defendant's "white supervisors" have applied disciplinary procedures and policies more harshly when dealing with plaintiff than when dealing with his white co-workers. *Id.,* ¶ 10. Second, plaintiff alleges that defendant's supervisors have maintained surveillance operations against him for alleged work rule violations while they have forgiven white co-workers for similar, or more serious, work violations. *Id.,* ¶ 11. Third, plaintiff contends that defendant's supervisors have investigated his private life without justification, while they have not invaded the privacy of similarly situated white employees. *Id.,* ¶ 12. Fourth, plaintiff alleges that defendant's supervisors have treated him differently than similarly situated white employees in the following respects: (1) by allowing co-workers to break into plaintiff's tool box and use his tools, often without returning them; (2) by assigning him and other black employees to work alone in white or dangerous black neighborhoods while white employees are sent in pairs when they are assigned work in dangerous or black neighborhoods; and (3) by denying him opportunities for overtime work that were extended to white employees. *Id.,* ¶ 13. Fifth, plaintiff contends that defendant has engaged in continuing discrimination against him which has resulted in financial loss and mental anguish. In particular, plaintiff alleges that his supervisor, Rick Peters, used racist remarks in plaintiff's presence and otherwise cultivated and encouraged a racist workplace. *Id.,* ¶ 14.

In count two of his complaint, plaintiff alleges that defendant's supervisors treated him differently than similarly situated white employees in retaliation for plaintiff's opposition to defendant's racially discriminatory practices. *Id.,* ¶¶ 18–23. The opposition to which plaintiff refers is a complaint that he filed in July 1993 with defendant's management. *Id.,* ¶ 19. He claims that after he submitted his written complaint, he was transferred to work at another location. *Id.,* ¶ 20. Plaintiff does not indicate whether this other location was in any way inferior to his former work location or whether the transfer constituted a hardship. He also alleges that defendant's supervisors falsely accused him of stealing his co-workers' tools, conducted surveillance operations against him, and accused him of reckless driving in retaliation for his earlier complaint. *Id.,* ¶ 21.

In count three, plaintiff alleges that he and fellow black employees have been systematically denied opportunities for training, career advancement, promotions, pay and benefit increases, and other benefits of employment available to white co-workers. *Id.,* ¶¶ 34–35. More specifically, he claims that defendant's policy and procedure whereby the company's first line supervisors, who plaintiff alleges are all Caucasian, *id.,* ¶ 34, base their recommendations for career advancement on subjective criteria disparately impacts black employees. *Id.,* ¶¶ 34–35. He contends that this practice constitutes a self-perpetuating situation in which black field technicians are seldom, or never, objectively

considered for the career advancement opportunities that white employees obtain. *Id.,* ¶ 34. Finally, he asserts that his career opportunities have been limited despite his proven skill and abilities while Caucasian co-workers with less seniority and no higher qualifications have been selected for promotions, training, and job placements which have advanced their careers with increased pay and benefits accruing to them. *Id.,* ¶ 36.

In count four, plaintiff alleges that defendant's supervisors have discriminated against him on account of his disability in violation of the ADA, causing plaintiff to suffer financial loss and mental anguish. *Id.,* ¶¶ 38–52. More specifically, plaintiff claims that defendant's supervisors (1) refused to reasonably accommodate plaintiff's "known disability," *id.,* ¶ 41; (2) refused him overtime opportunities provided to similarly situated employees, *id.;* (3) "otherwise treated him differently," *id.;* (4) improperly disclosed his disabilities to co-workers causing plaintiff to be ridiculed and scorned by his co-workers, *id.,* ¶ 42; (5) applied discriminatory procedures and policies more harshly to plaintiff than to similarly situated employees, *id.,* ¶ 44; (6) maintained surveillance operations against plaintiff for alleged work rule violations while they have forgiven his co-workers for similar, or more serious, work rule violations, *id.,* ¶ 46; and (7) investigated plaintiff's private life without justification while they have not invaded the privacy of similarly situated co-workers, *id.,* ¶ 46. Plaintiff never specifies the nature of his disability in his complaint or any supporting papers, although in his memorandum of law in opposition to the motion to dismiss he states that he is a partially disabled war veteran. Item 10, p. 12.

In count five, plaintiff contends that defendant violated the FMLA in several ways, causing him to suffer a loss of income and emotional distress. Item 1, ¶¶ 53–59. First, plaintiff alleges that defendant denied him necessary medical leave after he had followed the employer notification procedures set forth under the FMLA. *Id.,* ¶ 56. Second, he claims that defendant's supervisors discriminated against him for taking leaves of absence authorized under the FMLA. *Id.,*

¶ 57. Once again, plaintiff has not specified the nature of his illness in his complaint or any supporting papers. Plaintiff merely states that he was an eligible employee with a serious health condition as defined by 29 U.S.C. § 2611. *Id.,* ¶ 55.

Finally, in counts six and seven, plaintiff repeats his race and disability discrimination claims and alleges that the same acts violate the New York Human Rights Law. *Id.,* ¶¶ 60–69. Specifically, he contends that defendant discriminated against plaintiff in his employment based on his race in violation of N.Y.Exec.L. §§ 296–97, *id.,* ¶ 62, and that defendant discriminated against plaintiff in his employment based on his disability in violation of the Human Rights Law (no section cited). *Id.,* ¶ 67.

Defendant has moved to dismiss this case on the pleadings pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Items 6–7. Specifically, he contends that (1) the court lacks jurisdiction to hear most of plaintiff's claims because they are not reasonably related to plaintiff's underlying EEOC complaint; (2) plaintiff's conclusory allegations are insufficient to state a claim of discrimination under Title VII, the ADA, the FMLA or the New York Human Rights Law; and (3) plaintiff failed to state a claim with respect to his allegations of continuing discrimination.

## DISCUSSION

### I. *Relation to Plaintiff's EEOC Charge*

■ Although defendant has characterized this part of its motion as a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), "[i]t is well established ... that filing a timely charge with the EEOC is not a jurisdictional prerequisite to a suit in federal court—rather it is a condition precedent and 'like a statute of limitations, is subject to waiver, estoppel and equitable tolling.' " *Angotti v. Kenyon & Kenyon,* 929 F.Supp. 651, 653 (S.D.N.Y.1996) (quoting *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). Consequently, defendant's entire motion shall be treated as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). As such, the facts alleged in the complaint shall be pre-

sumed true, and all reasonable inferences shall be drawn in plaintiff's favor. *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993).

■ A district court may only hear those Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is "reasonably related" to that alleged in the EEOC charge. *Butts v. City of New York Dept. of Housing,* 990 F.2d 1397 (2d Cir. 1993) (quoting *Stewart v. United States Immigration and Naturalization Service,* 762 F.2d 193, 198 (2d Cir.1985)). This exhaustion requirement is designed to give the administrative agency the opportunity to investigate, mediate, and take remedial action to encourage the settlement of discrimination disputes through conciliation and voluntary compliance. *Butts,* 990 F.2d at 1401; *Stewart,* 762 F.2d at 198. If a complainant could litigate a claim not previously presented to and investigated by the EEOC, then the exhaustion element of Title VII's statutory scheme could easily be circumvented.

■ The Second Circuit has identified three situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge such that it would be unfair to bar such claims in an employment discrimination action brought under the federal civil rights laws. *Butts,* 990 F.2d at 1402. First, an employee can bring a claim in a civil action that was not raised in the EEOC charge where the conduct complained of would fall within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* (citing *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 107 n. 10 (2d Cir.1978)); *Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir. 1979), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). This flexibility is based on the Second Circuit's recognition that most EEOC charges are filled out by employees without the benefit of counsel and that the primary purpose of the charge is to alert the EEOC to the discrimination that the plaintiff claims he is suffering. *Butts,* 990 F.2d at 1402. Thus, the district court must consider whether the facts underlying the new claim are sufficient-

ly similar to those alleged in the EEOC charge such that the new claim would reasonably have flowed from the investigation of the EEOC charge. *See Gomes v. Avco Corp.,* 964 F.2d 1330, 1334–35 (2d Cir.1992).

Second, an employee can bring a new claim if it alleges retaliation by the employer for filing the EEOC charge. *Butts,* 990 F.2d at 1402 (citing *Malarkey v. Texaco, Inc.,* 983 F.2d 1204 (2d Cir.1993)); *Owens v. New York City Housing Authority,* 934 F.2d 405, 410–11 (2d Cir.), *cert. denied* 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991). The Second Circuit has relaxed the exhaustion requirement based on the close connection of the retaliatory act to both the initial discriminatory act and the filing of the charge itself. *Butts,* 990 F.2d at 1402.

> Due to the very nature of retaliation, the principle benefits of EEOC involvement, mediation of claims and conciliation, are much less likely to result from a second investigation. Indeed, requiring a plaintiff to file a second EEOC charge under these circumstances could have the perverse result of promoting employer retaliation in order to impose further costs on plaintiffs and delay the filing of civil actions relating to the underlying acts of discrimination.

*Id.*

Third, an employee can bring a new claim if the civil complaint alleges further incidents of discrimination carried out in precisely the manner alleged in the EEOC charge. *Id.* at 1402–03. Even though such an incident may not fall within the scope of the EEOC investigation arising from the initial charge since it might occur after the investigation was completed, the values associated with exhaustion would be satisfied by the investigation of the initial charge since the identical method of discrimination is at issue. *Id.,* at 1403.

In the present action, plaintiff made the following broad complaint of employment discrimination:

> I began working for NYNEX in 1991. My current job is field technician. Since my latest supervisor took over in September, 1994, I have been subjected to almost daily harassment. I believe that I am being harassed in willful violation of Title VII of

the Civil Rights Act of 1964, because of my race, black, and in retaliation for a previous charge of race discrimination that I filed.

*See* Item 6, exhibit A. As outlined above, plaintiff's complaint in this civil action contains seven separate grounds for relief, including disparate treatment, disparate impact and retaliation claims under Title VII, a separate claim under the ADA, a separate claim under the FMLA, and two claims under the New York Human Rights Law. Although further investigation may prove that many of these claims have merit, some of them must be dismissed at this stage since they are not reasonably related to the EEOC charge.

### A. *Plaintiff's Title VII Claims*

Plaintiff's disparate treatment claims present the court with the most difficult questions. Because plaintiff's EEOC charge is highly vague and broad-sweeping (stating that plaintiff has been harassed in violation of Title VII because of his race), an argument can be made that any discriminatory conduct that could constitute harassment is reasonably related to the EEOC charge. The discriminatory use of disciplinary procedures, surveillance operations, investigations into the private lives of employees, the system by which job assignments are made, and access to overtime opportunities are all in theory potential methods of harassment. In fact, practically any form of discrimination is by its very nature harassment.

■ In *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Supreme Court clarified the proper standard for determining whether employees have been subjected to an "abusive work environment harassment." The Court explained that Title VII has been violated "when the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 21, 114 S.Ct. at 370 (quoting *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)) (internal quotation marks omitted). Under

this standard, the conduct at issue must be both objectively hostile, "an environment that a reasonable person would find hostile or abusive," *Harris,* 510 U.S. at 21, 114 S.Ct. at 370, and subjectively hostile such that the victim perceived the environment to be abusive and the conduct has "actually altered the conditions of the victim's employment." *Id.*

In his memorandum of law in opposition to defendant's motion to dismiss, plaintiff argues that all of his Title VII claims are sufficiently related to the EEOC charge in that they would be investigated in the course of the investigation of this broad EEOC charge. Without going into a discussion of how each claim in his civil complaint satisfies the legal definition of workplace harassment set forth in *Harris,* plaintiff contends that all of his claims constitute harassment in some form. He also asserts that because he filed his EEOC complaint without the aid of counsel and in reliance on EEOC representatives who conducted the intake interview, the court should be more lenient in applying the reasonably related test. *See* Item 10, pp. 4–6.

Defendant argues that the court should take a far more narrow view of what constitutes reasonably related allegations of discrimination. Specifically, defendant contends that because plaintiff did not mention allegations regarding disciplinary policies and procedures, surveillance operations, privacy issues, job assignments and/or equipment issues in his EEOC charge, none of these claims are reasonably related to plaintiff's broad claim of harassment. *See* Item 7, p. 8. Defendant also does not discuss whether or not any of plaintiff's claims satisfy the legal definition of harassment as set forth in *Harris.* In response to plaintiff's argument regarding the absence of attorney assistance in filing the EEOC complaint, defendant asserts that there is no judicial precedent supporting the position that the court should be more lenient and argues that allowing greater flexibility would render the administrative process an exercise in futility. *See* Item 11, p. 3.

■ Although the court is sympathetic to defendant's concerns, given the broad definition of hostile work environment as set forth

in *Harris* and given that on a motion to dismiss the court must presume all factual allegations of the complaint to be true and must draw all reasonable inference in favor of the non-moving party, *Sykes*, 13 F.3d at 519, this court finds that all of plaintiff's disparate treatment claims may go forward. Each of the disparate treatment claims included in count one of this complaint could be considered severe and pervasive harassment. Specifically, assuming that defendant's supervisors (1) applied disciplinary procedures more harshly to plaintiff, (2) conducted surveillance operations against plaintiff while not conducting similar operations against similarly situated white employees (3) investigated plaintiff's private life while not investigating the private lives of similarly situated white employees, (4) allowed co-workers to break into plaintiff's tool box, (5) assigned plaintiff to work alone in dangerous black or white neighborhoods, (6) denied plaintiff opportunities for overtime work that were extended to white employees, and (7) used racist remarks and otherwise cultivated and encouraged a racist workplace, such conduct could certainly satisfy both the objective and the subjective prongs of the standard set forth in *Harris*. Even though the EEOC complaint did not include any specific details of the nature of the alleged harassment, a thorough investigation of plaintiff's work environment could reasonably result in an investigation of each of the aforementioned allegations.

■ Plaintiff's retaliation claim is a claim that appears on its face to be reasonably related to the EEOC charge. Although the EEOC charge is admittedly brief, plaintiff clearly indicated that he believes that he has been discriminated against "for a previous charge of race discrimination." The fact that the EEOC charge does not provide any specific details regarding plaintiff's prior complaint for which he is now allegedly being retaliated does not foreclose this claim, since it is highly likely that the EEOC investigation would naturally result in the investigation of plaintiff's July 1993 internal complaint and his subsequent treatment by defendant's supervisors. Neither party directly addresses the question of whether plaintiff's retaliation claim satisfies the Title VII exhaustion

requirement in their supporting memoranda of law, suggesting that they concede that this claim is reasonably related to the EEOC charge.

■ Plaintiff's disparate impact claim, in which he alleges that defendant's policy and procedure whereby the company's first line supervisors base their recommendations for career advancements on subjective criteria systematically denies black employees opportunities for training, career advancement, promotions, pay and benefit increases, and other benefits of employment available to white co-workers, is unrelated to the EEOC charge and therefore must be dismissed. The fact that plaintiff failed to raise a disparate impact claim in his EEOC charge is not itself grounds for dismissal. The disparate impact claim would survive this motion if the facts alleged in the EEOC charge were sufficiently related to the facts alleged in the new disparate impact claim such that an investigation of the latter would reasonably have flowed from the investigation of the former. *See Gomes v. Avco Corp.*, 964 F.2d 1330, 1334–35 (2d Cir.1992). It is difficult to see how the investigation of alleged workplace harassment could lead to an investigation of the process through which employees are promoted. Although many acts may constitute harassment, this court believes that promotion decisions, including negative decisions, do not constitute harassment. Allowing plaintiff to bring this claim for the first time in federal court would frustrate the essential purpose of the EEOC exhaustion requirement.

### B. *Plaintiff's ADA Claim*

■ Plaintiff's ADA claim must be dismissed for failure to comply with the statutory exhaustion requirement. As under Title VII, a plaintiff bringing an employment discrimination action under the ADA must first file a complaint with the EEOC. *See* 42 U.S.C. § 12117 (adopting for claims brought under the ADA the administrative exhaustion requirement of Title VII, codified at 42 U.S.C. § 2000e–5); *Bent v. Mount Sinai Medical Center*, 882 F.Supp. 353, 355 (S.D.N.Y.1995); *Finley v. Giacobbe*, 827

F.Supp. 215, 219, n. 3 (S.D.N.Y.1993). Thus, if an ADA claim has not first been presented to the EEOC, the district court may only hear it if it is reasonably related to the EEOC charge.

Plaintiff's EEOC claim, reproduced above, contains no mention that plaintiff is disabled in any way or that he believes that he has been discriminated against based on a qualified disability. He only charged defendant with race discrimination. Plaintiff could have checked off the disability box on the EEOC form where the employee is instructed to designate the cause of the alleged discrimination since he was not limited in the number of complaints that he could make in his EEOC charge. It is difficult to see how an investigation of race discrimination could naturally lead to an investigation of discrimination based on a qualified disability. Plaintiff argues that his employment application specifically identifies the nature of his disability and therefore defendant was put on notice. This argument is not persuasive since his employment application is not part of his pleadings and there is no authority supporting the proposition that a defendant must refer to an employee's original employment application whenever an employment discrimination action has been filed against it.

Since plaintiff has not alleged that this discrimination was committed in retaliation for the filing of an EEOC complaint or that his complaint merely alleges a further incident of discrimination carried out in precisely the manner as alleged in the EEOC charge, this claim is not reasonably related to plaintiff's August 14, 1995, EEOC charge. From the face of the EEOC complaint, defendant could not have been put on notice that it was being accused of discriminating against plaintiff on account of his disability. Allowing these claims to proceed in federal court would clearly frustrate the essential purpose of the statutory exhaustion requirement— giving the EEOC the opportunity to investigate, mediate, and take remedial action to encourage the settlement of discrimination disputes through conciliation and voluntary compliance.

In sum, plaintiff's Title VII disparate treatment claims contained in count one of plaintiff's complaint and his Title VII retaliation claim both survive defendant's motion to dismiss for failure to comply with the statutory exhaustion requirements. Plaintiff's Title VII disparate impact claim and his ADA claim must be dismissed at this time as neither is reasonably related to his August 14, 1995, EEOC charge. Because the FMLA does not contain an administrative exhaustion requirement involving the EEOC or any other federal agency, plaintiff's FMLA claim in count five survives this part of defendant's motion.

## II. *Dismissal for Failure to State a Claim*

In his motion to dismiss, defendant also contends that most of plaintiff's claims must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, defendant asserts that plaintiff failed to plead with sufficiently concrete and specific supporting facts. Both parties acknowledge that a plaintiff bringing an employment discrimination action "cannot rest on naked assertions or conclusory allegations of discrimination." *Lawrence v. Chairman, E.E.O.C.,* 728 F.Supp. 899, 902 (N.D.N.Y.1990) (quoting *Nielsen v. Flower Hospital,* 639 F.Supp. 738, 743 (S.D.N.Y.1986)). "Complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987). The parties merely disagree over whether each claim is sufficiently specific to survive review under Rule 12(b)(6). The court shall only consider whether the claims surviving the first part of the motion to dismiss have been stated with sufficient specificity to survive this part of defendant's motion.

Dismissal under Fed.R.Civ.P. 12(b)(6) is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). "The issue is not wheth-

er a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Dismissal under Rule 12(b)(6) is proper only in extraordinary cases. *See United States v. Redwood City,* 640 F.2d 963 (9th Cir.1981).

### A. *Plaintiff's Title VII Claims*

Regarding plaintiff's disparate treatment claims, defendant argues that plaintiff's complaint simply asserts "a plethora of conclusory allegations." He contends that plaintiff's failure to plead any specific instances when any of the alleged discriminatory conduct took place renders each claim insufficiently particular. *See* Item 7, p. 6.

Plaintiff argues that his claims are sufficiently particular in that they specify the precise nature of disparate treatment being challenged. He explains that during the relevant times, there were a finite number of disciplinary proceedings, surveillance operations, and tool box incidents such that defendant was placed on notice of the challenged conduct. He reminds the court that the Federal Rules of Civil Procedure contemplate a system of liberal pleading rules followed by extensive discovery thereby enabling the specific contours of a complaint to be developed during the discovery phase of litigation. *See* Item 10, p. 4.

 The federal courts have not formulated a definitive test for determining whether pleadings are sufficiently specific to survive a motion to dismiss under Fed. R.Civ.P. 12(b)(6). Given the philosophy of having a system of liberal pleading rules and given that dismissal on the pleadings for failure to state a claim are only proper where it is clear that plaintiff can prove no facts to support his claim, this court finds that plaintiff's disparate treatment claims are sufficiently specific to survive this motion. Although plaintiff does not support each allegation with specific incidents of discriminatory conduct, defendant is put on notice of the particular practices being challenged. Defendant is correct in stating that specific dates would help it formulate accurate answers to plaintiff's allegations; never-

theless, helpfulness is not the standard for sufficiency of pleadings and for motions to dismiss under Rule 12(b)(6). Moreover, defendant is not prejudiced in any way by allowing these claims to go forward into discovery. If at the close of discovery plaintiff has not provided defendant and this court with further specifics regarding his claims, defendant may make a motion for summary judgment.

Regarding plaintiff's retaliation claim, defendant argues that plaintiff has failed to state a prima facie case of retaliation. Defendant correctly notes that in order to make out a prima facie case of retaliation, a plaintiff must show (i) participation in a protected activity known to the defendant, (ii) an employment action disadvantaging the plaintiff; and (iii) a causal connection between the protected activity and the adverse employment action. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir.1995). Defendant contends that plaintiff has not satisfied any of these three elements. *See* Item 7, pp. 12–14.

Defendant contends that plaintiff has not established the causal nexus between his engaging in a protected activity and defendant's adverse action. First, defendant argues that plaintiff has failed to allege that defendant's supervisors were aware that plaintiff was engaged in a protected activity. Second, defendant notes that "[a] causal connection may be established either *indirectly* by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or *directly* through evidence of retaliatory animus directed against a plaintiff by the defendant." *Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir.1991) (citing *DeCintio v. Westchester County Medical Center,* 821 F.2d 111, 115 (2d Cir.), *cert. denied* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987)) (emphasis in original). After noting that plaintiff does not offer any evidence of either disparate treatment of fellow employees engaged in similar conduct or of retaliatory animus directed against plaintiff, defendant contends that plaintiff's claims of continuing discrimination in retaliation for his July 1993 complaint must fail because the

actions do not closely follow the protected activity. In support of this position, defendant cites *Zenni v. Hard Rock Cafe Intern., Inc. (N.Y.),* 903 F.Supp. 644, 656 (S.D.N.Y. 1995), in which a district court judge found that where a full year has passed between the filing of a complaint and the defendant's alleged retaliatory conduct, plaintiff failed to satisfy the causal nexus requirement.

Plaintiff argues that his pleadings are sufficient to survive a motion to dismiss noting that the *Tomka* court cautioned that "the burden that must be met by an employment discrimination plaintiff to survive a summary judgment motion at the prima facie stage is *de minimis." Tomka,* 66 F.3d at 1308 (quoting *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988)) (internal quotation marks omitted). He contends that the allegations in his complaint demonstrate that he complained to defendant about particular incidents of discrimination in July 1993, a protected activity, that defendant subsequently transferred him to a different facility and defendant's supervisors subjected him to several forms of discrimination, and that this discriminatory treatment closely followed his written complaint establishing the required causal nexus. He emphasizes that the court should not consider whether he has conclusively proven that there is a causal nexus between his protected activity and defendant's retaliatory conduct at this early stage. *See* Item 10, pp. 7–8.

■■■ Bearing in mind that on a motion to dismiss the court must presume all factual allegations of the complaint to be true and must draw all reasonable inferences in favor of the non-moving party, this court finds that plaintiff's allegations of retaliation are sufficient to state a claim. Even though plaintiff has not supplied defendant with a specific date on which he allegedly filed his complaint with defendant, he has provided defendant with enough information whereby it can verify the existence of such a complaint. Plaintiff has also specified the particular conduct which he believes were acts conducted in retaliation against his initial act. Finally, he has made allegations that raise the factual question of whether there is a causal nexus between his protected activity and defen-

dant's retaliatory conduct such that it cannot be said that plaintiff cannot prove a set of facts in support of his claim which would entitle him to relief. Since the Second Circuit has instructed that the plaintiff's burden to survive a summary judgment motion at the prima facie stage of a retaliation case is *de minimis, Tomka,* 66 F.3d at 1308, it is difficult to see how the plaintiff's burden to survive a motion to dismiss can be more onerous.

### B. *Plaintiff's FMLA Claim*

Defendant asserts that plaintiff has failed to state a cognizable claim under the FMLA because he has not set forth well-pleaded factual allegations. More specifically, defendant notes that plaintiff failed to (1) furnish any dates for when he allegedly applied for and took leave pursuant to the statute; (2) disclose how and when defendant discriminated against him for taking such medical leave; and (3) allege what made him an eligible employee under the FMLA. Item 7, pp. 21–22. Defendant fails to cite any authority regarding the pleading requirements of the FMLA in support of his argument.

Plaintiff argues in a general manner that all of the allegations in his complaint are sufficiently particular to state claims for relief. He emphasizes that under Fed.R.Civ.P. 8(a)(2) detailed pleading is not required to demonstrate that the pleader is entitled to relief. He notes that the purpose of the pleading rules is to give the defendant a fair understanding of the nature of the plaintiff's complaint. Item 10, pp. 1–2, 13. Plaintiff does not specifically address whether his FMLA complaint properly states a claim and he does not cite any authority regarding the pleading requirements of the FMLA.

■■■ Enacted on February 5, 1993, the FMLA is the embodiment of Congress' attempt to balance the demands of the workplace with the needs of employees to take leave for eligible medical conditions and compelling family reasons. 29 U.S.C. § 2601(b). In addition to providing eligible employees with up to twelve weeks of unpaid leave to handle qualified family problems, the FMLA ensures that those who take such leave will be restored to their former position or an

equivalent upon returning to work. 29 U.S.C. § 2612(a)(1); 29 U.S.C. § 2614(a)(1); *Freemon v. Foley,* 911 F.Supp. 326, 329–30 (N.D.Ill.1995). In order to survive a motion to dismiss, a plaintiff must show that (1) he is an eligible employee under the FMLA, as defined in 29 U.S.C. § 2611(2); (2) defendant is an employer under the FMLA, as defined in 29 U.S.C. § 2611(4); (3) he was entitled to leave under the FMLA, as defined in 29 U.S.C. § 2612(a)(1); and (4) defendant engaged in some prohibited act, as defined in 29 U.S.C. § 2615. *See Blidy v. Examination Management Services,* 1996 WL 568786 (N.D.Ill.).

█ Plaintiff's complaint in the present action fails to state a claim under the FMLA. First, plaintiff fails to show that he is an eligible employee under the FMLA. He merely asserts in a conclusory manner that he is eligible without stating any facts that relate to the definition of an eligible employee. In order to be an eligible employee, a person must have been employed by his employer for at least twelve months and must have worked at least 1,250 hours in the twelve months preceding the leave. Plaintiff has not addressed either issue in his complaint. Also, since plaintiff fails to provide any dates in his complaint, it is impossible to surmise whether he was an eligible employee when he requested and took leave.

Second, plaintiff fails to show that defendant is an employer under the FMLA. His pleadings must allege that defendant employs fifty or more employees for each working day of twenty or more calendar workweeks in the current or proceeding calendar year. 29 U.S.C. § 2611(4). Plaintiff merely states in a conclusory manner that defendant is an employer as defined by 29 U.S.C. 2611(5),[1] without specifically addressing the statutory requirement. Item ·1, ¶ 54. "Though plaintiff may believe that such allegations are 'obvious' and thus rendered unnecessary, absent such allegations, the complaint is plainly deficient and cannot state a claim under the FMLA." *Burke v. Nalco Chemical Co.,* 1996 WL 411456 (N.D.Ill.).

Third, plaintiff fails to show how and why he was entitled to leave under the FMLA. Title 29 U.S.C. § 2612(a)(1) indicates four separate situations in which an employee is entitled to take leave. Plaintiff states that he was eligible to take leave because he is a person with a serious medical condition as defined in 29 U.S.C. § 2611(11), which is an authorized category under § 2612(a)(1)(D); however, he does not allege any facts that indicate the nature of his illness. *See* Item 1, ¶ 55. Consequently, defendant has not been put on notice of the precise nature of the complaint and the court does not have enough information to assess whether plaintiff's illness truly renders him eligible for leave under the FMLA.

Finally, plaintiff states in a conclusory manner that defendant denied plaintiff's requests for leave on numerous occasions and that defendant's supervisors discriminated against him for taking medical leave. Item 1, ¶¶ 56–57. Once again, plaintiff has failed to provide any specific or even approximate dates of particular incidents for when he was denied leave or discriminated against for taking leave, and he does not describe the manner in which he suffered discrimination. Although plaintiff might be able to survive this motion to dismiss if this element was the only one that was insufficiently plead, since defendant is arguably put on notice of the general nature of plaintiff's claim and since the standard of particularity of pleadings is relatively weak on a motion to dismiss, because plaintiff has failed to plead the other three elements of a FMLA cause of action adequately, the sufficiency of this single element will not alter the result.

For the reasons stated above, this court grants defendant's motion to dismiss plaintiff's FMLA claim for failure to state a claim for which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). Pursuant to Fed. R.Civ.P. 15(a), plaintiff may have leave to amend his , complaint with respect to his FMLA claim. The Second Circuit has indicated that the district courts should ordinarily grant leave to amend whenever they dis-

---

1. Plaintiff cites the wrong subsection of the FMLA in his complaint. The proper subsection is 2611(4).

miss complaints pursuant to Rule 12(b)(6). *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991). "This principle should be applied with particular strictness when the plaintiff seeks to file an amended complaint charging a violation of his civil rights." *Id.*

### III. *Failure to State a Claim of Continuing Discrimination*

■ Defendant notes that plaintiff has asserted many of his claims of discrimination under what appears to be a theory of continuing violations and argues that because plaintiff has failed to state any alleged discriminatory act with specificity these claims also must be dismissed for the failure to state a claim of continuing violations. Item 7, pp. 10–12. Defendant correctly acknowledges that the continuing violations exception to Title VII allows plaintiffs to bring in claims of discrimination that would otherwise be barred by the statute of limitations. *See Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 503–04, 66 L.Ed.2d 431 (1980). "Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims or acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993) (citing *Cook v. Pan Am. World Airways, Inc.,* 771 F.2d 635, 646 (2d Cir. 1985), *cert. denied,* 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986)). Defendant also correctly notes that the Second Circuit looks unfavorably upon continuing violation arguments and will only apply the exception where plaintiff alleges discrimination by virtue of a specific official policy or mechanism. *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994).

Plaintiff acknowledges the purpose of the continuing discrimination exception and argues that he has unambiguously asserted a continuing violation both in his EEOC charge and his civil complaint. He contends that in his complaint he identified particular discriminatory conduct and plainly asserted that such conduct "continues to this day." Item 10, p. 6.

Although defendant may have a legitimate argument that plaintiff's claims are barred by the statute of limitations because he has failed to plead allegations of continuing discrimination, defendant has misused the doctrine in arguing that plaintiff has failed to state a cause of action of continuing discrimination, and therefore his complaint must be dismissed. As both parties acknowledge, this doctrine relates only to the application of the statute of limitations in Title VII discrimination actions. It is not a separate pleading requirement. All of the cases on which defendant relies address the question of whether the plaintiff's claim is time-barred, not whether the plaintiff has successfully stated a claim of continuing violations. If defendant had intended to argue that plaintiff's claims are time-barred, this argument is not clear from its memoranda of law.

Since defendant misapplied the case law regarding continuing violations, or at least has failed to make a clear argument as to how and why plaintiff's claims are time-barred, and since defendant's arguments regarding plaintiff's allegations of continuing violations really boil down to a restatement of its argument that plaintiff's allegations are conclusory in nature and therefore fail to state claims upon which relief can be granted, this court will not repeat its analysis of whether plaintiff's claims survive Fed. R.Civ.P. 12(b)(6) scrutiny. The court's conclusion that plaintiff's Title VII disparate treatment and retaliation claims survive such scrutiny, discussed in the immediately preceding section, includes those claims which employ language alluding to continuing discrimination.

### IV. *Plaintiff's Claims Under the New York Human Rights Law*

Because this court has decided to dismiss plaintiff's Title VII disparate impact claim and plaintiff's ADA claim for failure to exhaust administrative remedies, the court declines to exercise pendent jurisdiction over the corresponding state claims until the federal claims are ripe. Since the Second Circuit has indicated that "New York courts

require the same standard of proof for claims brought under the [Human Rights Law]" as those brought under Title VII, *Tomka*, 66 F.3d at 1304 n. 4, allowing the state law claims to continue in federal court would enable plaintiff to circumvent the statutory administrative exhaustion requirements. Thus, the only state claims that survive this motion to dismiss are those which correspond to the surviving federal claims.

### V. *Plaintiff's Request for Leave to Amend His Complaint*

 In his reply memorandum to defendant's motion to dismiss, plaintiff requests leave to amend his complaint if the court finds that any of his causes of action are insufficiently plead. Item 10, pp. 13–14. Although Fed.R.Civ.P. 15(a) instructs that leave to amend shall be freely given when justice so requires, a district court may deny such a request when leave to amend would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir.1995). Since the court has decided to dismiss plaintiff's Title VII disparate impact claim and plaintiff's ADA claim for failure to satisfy the statutory exhaustion requirement rather than for the failure to state a claim, allowing plaintiff to amend his pleading would not save either claim. Plaintiff must first present these claims to the EEOC and obtain a right to sue letter therefrom. Consequently, this court denies plaintiff's request to amend his complaint with respect to his Title VII disparate impact claim and his ADA claim since such an amendment would be futile.

As explained above, this court does grant plaintiff's request to amend his complaint with respect to his FMLA claim since the court is dismissing it for the failure to state a claim rather than for failure to comply with statutory exhaustion requirements.

### CONCLUSION

For the foregoing reasons, this court grants in part defendant's motion to dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6). Specifically, the court dismisses plaintiff's Title VII claim alleging disparate impact and plaintiff's ADA claim for failure to satisfy the statutory administrative exhaustion requirements. Plaintiff may not amend his complaint with respect to either of these claims. The court also dismisses plaintiff's FMLA claim for failure to state a claim for which relief can be granted. Plaintiff may amend his complaint with respect to this claim. Plaintiff's Title VII claims alleging disparate treatment and retaliation claims both survive this motion to dismiss as do his corresponding state law discrimination claims.

Plaintiff shall file an amended complaint in accordance with this order not later than January 20, 1997.

So ordered.